## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* WAREN.

### Opinion delivered November 5, 1898.

1. WITNESS—COMPETENCY—AGE.—An infant under the age of 10 years is incompetent to testify in a civil case, under Sand. & H. Dig., § 2916. (Page 624.)

2. RAILROADS—DUTY TO KEEP LOOKOUT.—An instruction that it is "the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track" is erroneous and prejudicial. (Page 624.)

3. SAME—INSTRUCTION.—In instructions as to negligence, it was not error for the court to substitute the phrase "due care" for "ordinary care;" if the former phrase needed explanation, the court should have been asked to define it. (Page 624.)

4. SAME—DUTY TO KEEP LOOKOUT—INSTRUCTION.—Where it appeared that outsiders called the attention of defendant's trainmen to the dangerous position of plaintiff in front of an approaching engine, it was not error to refuse an instruction asked by defendant that "in the due and proper management of its trains, and in the movement thereof, the defendant's employees were not required, as a matter of law, to notice and obey signals given by persons not in the employ of the defendant company." (Page 625.)

5. TRIAL—IMPROPER ARGUMENT.—In a personal damage suit against a railroad company, one of plaintiff's counsel in argument referred to

the length of time the defendant had kept plaintiff in abeyance by changes of venue and by motions for continuance. The court admonished counsel, and instructed the jury to disregard such remarks. The same counsel was further permitted to say, in effect, that certain of defendant's witnesses, who were employed by it, would have been discharged if they had not testified as they did, but there was no proof that this statement was true. The jury returned a verdict for a sum held to be excessive under the circumstances in proof. *Held* that the improper remarks of counsel were prejudicial, notwithstanding the court's admonition. (Page 625.)

6. PERSONAL INJURY TO MINOR—DAMAGES.—In an action by a minor to recover damages for a personal injury caused by defendant's negligence, the measure of plaintiff's damages is his probable loss of earnings after he reaches majority, occasioned by the injury, and the increased expenses he will probably incur on account of the injury after that time, taking into consideration the value of the use during his minority of the money allowed for such loss and expense; to this should be added damages for his past, present and future pain from the injury and for personal disfigurement. (Page 627.)

7. REMITTITUR—ALLOWANCE.—A remittitur of excessive damages will be allowed only where excessiveness of damages is the only error found in the record, and the supreme court is able to designate an amount that will not be excessive. Under this rule a remittitur of excessive damages was refused where the evidence was conflicting, and there were errors at the trial which might have influenced the jury, so that it could not be determined from the record whether plaintiff would have recovered at all if such errors had not been committed. (Page 628.)

Appeal from Bradley Circuit Court.

MARCUS L. HAWKINS, Judge.

*Dodge & Johnson*, for appellant.

The evidence does not show negligence on the part of the company. Cooley, Torts, 630; 21 L. R. A. 820, note; 12 Am. & Eng. Ry. Cas. 163; 76 Mich. 591; 113 Mo. 670; 53 N. J. L. 233; 112 Ind. 404; 40 S. W. 863; 100 Pa. St. 144; 34 L. R. A. 459. If a child under 10 years of age is capable of understanding the obligation of an oath, he is a competent witness. 25 Ark. 96; 1 Greenl. Ev. § 367; 25 Ark. 448; 1 East, Pl. Cr. 442; McNally, Ev. 154; 10 Mass. 225; 1 Leach, Cr. Cas. 237; 19 So. Rep. (Ala.) 530; 159 U. S. 524; 1 Whart. Ev. §§ 398, 399, 400; 1 Best, Ev. §§ 155, 156; 88 Wis. 180; 102 Mo. 270; 88 Ala. 147; 23 Minn. 104; 39 Tex. 129; 2 Allen, 295; 47 Ga. 524; 79 N. C. 648; 9 Ore. 457; 11 Ind. 196; 3 App. D. C. 335; 165 Mass. 427; 35 S. W. 174; 25

S. E. 626; 37 S. W. 771; 79 Hun, 23; 4 Burrow, 25, 29; 21 Ark. 329. No proper foundation was laid for the impeachment of witness Biggers. 27 S. W. 432; Sand. & H. Dig., § 2960; 37 Ark. 328; 16 How. 46; 20 Md. 269; 36 Mo. 161; 8 Humph. 663; 10 Yerg. 347; 12 Ala. 129; 8 Ark. 572; 15 *ib.* 359; 16 *ib.* 569; 52 Ark. 308; 73 Fed. 777. It was error to instruct the jury that it was the duty of *all* those running the train to keep a lookout. 62 Ark. 185. The second instruction given for plaintiff was erroneous, in that it is based on assumptions of facts which should be left to the jury. 14 Ark. 530; 16 Ark. 569; 31 Ark. 699; 14 Ark. 295. It was error for the court to substitute the words *"due care"* for *"ordinary care"* throughout appellant's instructions. See Webst. and Stand. Dictionaries, word *"due;"* 44 S. W. 1067, 1068; 76 Mich. 591; 113 Mo. 570; 53 N. J. L. 233. It was error to allow plaintiff's counsel to argue facts not in the record. Also, the applause of the bystanders at the close of the argument of plaintiff's counsel was prejudicial to appellant. 61 Ark. 137; 48 Ark. 131, 132; 44 Wis. 282; 58 Ark. 473; 49 Ark. 34; 105 Ind. 304; 156 U. S. 361; 37 S. W. 432; 75 Ind. 220; 59 Ark. 368. The verdict is excessive. 33 Ark. 365; 57 Ark. 377; 42 Ark. 527; Wood's Mayne, Dam. 746, and cases; 3 Suth. Dam. 259; 3 Sedg. Dam. § 1319; Lofft. (Eng. K. B.) 771; 36 Fed. 252; 9 R. I. 139; Style (Eng.), 466; 16 Pick. 547; 36 Kas. 58; 22 Mo. 170; 3 Kas. 244; 19 Barb. 461; 53 Ill. 407; 69 Ill. 475; 3 C. C. A. 147; 53 Ark. 10; 58 Ark. 472, 473.

*George W. Murphy*, for appellee.

The lookout should be such as is calculated to avoid accident. 63 Ark. 177; 64 Ark. 236. As to the competency of the child. Sand. &. H. Dig., §§ 2915, 2916; 25 Ark. 448. The foundation for impeachment of appellant's witness was properly laid. 1 Greenl. Ev. § 462*a*; 52 Ark. 306; 37 Ark. 324; 86 Ind. 387; 56 Ind. 343–348; 2 Thomp. Tr. § 2756. The second instruction of plaintiff was proper. 91 Ill. 406. "Due care" means "reasonable care, adapted to the circumstances." 26 Am. Rep. 645; 10 Allen, 532; 54 Md. 656; 46 Ark. 513; 36 Ark. 41. Appellant, by not pressing the objection to the argument of appellee's counsel, waived it. 1 Thomp.

Tr. § 957, 967. The verdict is not excessive. 31 L. R. A. 855; 75 Fed. 102; 33 Ill. App. 450; 32 N. Y. Sup. 915; 14 N. Y. Sup. 336; 24 Hun, 184; 39 Hun, 5.

BATTLE, J. Ester Waren, a child about two and a half years old, was knocked down and seriously injured by one of the trains of the St. Louis, Iron Mountain & Southern Railway Company. He instituted this action against the railway company to recover the damages he suffered by reason of his injury. The main facts in the case are as follows: On the 24th of December, 1894, one of the defendant's trains, composed of seven cars, a caboose, and an engine, going north, arrived at Portland, a town in Ashley county, in this state. It arrived about 3:15 in the afternoon, and, after stopping at the depot for a short time, received orders to move on the side track, and await the arrival and passing of a south bound train due at 3:12 p. m. In obedience to these orders, it backed down the main track, according to the testimony of some witnesses, at the rate of six to eight miles, and of others at the rate of ten to twelve miles an hour. While the train was backing, some witnesses say that the bell upon the locomotive or engine was ringing, and others that they did not hear it; some say that there were two brakemen upon the cars keeping a lookout, and others that they saw no one, although they looked to see if any one was upon the train for that purpose. About or during this time Ester Waren was pursuing a flock of domestic geese in the street not far from the train. His aunt was sent to take him back to the house, where his mother was, which was about sixty yards from the railroad track, and near to where the boy was playing. As the aunt approached, the boy fled, and she pursued. In his effort to escape he ran upon the railroad track in front of the backing train, at a distance therefrom which was variously estimated by witnesses to be from twelve feet to sixty yards. His mother, seeing his danger, screamed aloud, and thereby gave a signal of great distress. Others hollowed, and waived their hands in an earnest effort to attract the attention of the trainmen to the boy's situation. But these signals of danger and distress were not seen or heard. The train, unchecked in its speed, struck the boy, ran over him, cut off both of his hands, and lacerated and seriously injured one

leg and foot. From these injuries he suffered excruciating pain. Opiates were necessarily administered to enable him to endure it. When not asleep, he cried for his hands. He continued in that condition from four to six weeks. He has never been able to walk. He moves about with great difficulty by hopping; and in that way can travel only a short distance without resting.

Upon evidence tending to prove the foregoing facts, which was adduced in a trial before a jury, a verdict was returned in favor of the plaintiff against the defendant for the sum of $40,000; and a judgment was rendered accordingly. The defendant insists that this judgment should be reversed for the following reasons: (1) Because the court erred in refusing to allow Earle Newton, a lad of the age of 8 years, to testify in behalf of the defendant. (2) Because the court erred in instructing the jury, at the instance of the plaintiff, and over the objections of the defendant, as follows: "1. It is the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employees of any railroad to keep such lookout, the company owning and operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, and the burden of proof shall devolve upon such railroad to establish the fact that this duty has been performed." (3) Because the court erred in refusing to instruct the jury at the instance of the defendant as follows: "The court instructs the jury that no railway company can be held liable for neglect where plaintiff by his own negligence has contributed to the injury, unless it was a wilful injury, or one resulting from want of ordinary care on the part of the company to avert it after plaintiff's negligence has been discovered. And you must consider this without regard to the amount of negligence on each side. In other words, although you should believe that defendant company was in this case guilty of some negligence, and at first this negligence was the greater, still you must find for defendant, if you further believe that the injury was caused by Ester Warren appearing suddenly and without

warning upon defendant's track so near a backing train that his dangerous position by the exercise of ordinary care was not discovered in time to avoid the injury." And, in striking out the words "ordinary care," wherever they appear in the instruction, and substituting therefor the words "due care," and giving it as modified. (4) Because the court erred in refusing to give other instructions at the request of the defendant, and striking out the word "ordinary care," wheresoever they appear therein, and substituting therefor the words "due care," and giving themas modified. (5) Because the court erred in refusing to instruct the jury at the request of the defendant as follows: "31. The court instructs the jury that in the due and proper management of its trains, and in the movement thereof, the defendant's employees were not required, as a matter of law, to notice and obey signals given by persons not in the employ of the defendant company." (6) Because one of plaintiff's attorneys made improper statements while addressing the jury. (7) Because the damages rendered are excessive, and appear to have been assessed by the jury under the influence of passion or prejudice.

We will consider the alleged errors in the order stated.

First. The court properly refused to allow Earle Newton to testify. He, being under the age of ten years, was incompetent to testify, under the statutes of this state. Sand. & H. Dig., § 2916, sub-division 2.

Second. The instruction as to "the duty of all persons running trains in this state upon any railroad to keep a constant lookout for persons and property upon the track" should not have been given. An instruction to the reverse was held to be correct in *St. Louis S. W. Ry. Co.* v. *Russell*, 62 Ark. 185. Unexplained by other instructions, it would have been prejudicial to the defendant.

Third and Fourth. In striking out the words "ordinary care" in the instructions asked for by the defendant, and substituting therefor the words "due care," the court did not alter the legal meaning of the instructions. The modification was unnecessary. The defendant should have asked for an instruction explaining to the jury what was meant by the words "due

care." Failing to do so, it has no right to complain of the substitution. *Fordyce* v. *Jackson*, 56 Ark. 594, 602.

Fifth. The instruction as to the duty of the defendant's employees to notice and obey signals given by persons who were not employed by it was properly refused.

Sixth. In his speech before the jury, after the close of the evidence, R. E. Craig, one of the plaintiff's attorneys, said: "Mr. Taylor, in examining the witnesses, asked the question if their recollection was quite clear about things that happened two years ago, and if that was not a long time to remember the words of a man. For almost that length of time the plaintiff in this case, poor and poverty stricken, by changes of venue, by motions for continuances, and by those means known to those lawyers who undertake to conduct the railroad cases in this country—." The defendant here objected to the remarks, and the court interrupted the speaker, saying: "Brother Craig, there is an exception to your remarks." The speaker then continued: "I stand on the remarks. The record shows everything I have said. By those means, I say, and for that length of time they have succeeded in holding the plaintiff in this case in abeyance, but I am proud to say to you, gentlemen of the jury, today, that we have them at last where they can shirk no longer by any means known to the law, and that we now have the privilege of presenting to a jury of twelve honorable and honest and impartial jurors, this case, and the injuries to Ester Waren." Defendant at the time objected to the above remarks by plaintiff's counsel, but the court permitted him to proceed and make said remarks to the jury, over the said objections of the defendant, to which action of the court and counsel, the defendant at the time saved exceptions. At the close of said [attorney's argument, the court instructed the jury that the above remarks were improper, and they should pay no attention thereto, specifically calling their attention to what was said of changes of venue and motions for continuances.

In another portion of his argument to the jury, said attorney, R. E. Craig, was further permitted by the court to make use of the following language: "If Hall and Meadows had not come before this jury, and testified exactly what the railroad wanted them to testify to, that is, that the bell was ringing, and

that Hall and Meadows were in their places, what would have been the consequences? They would have received their walking papers. There has never been a case before a jury where the railroad employees did not come before the jury and testify everything that was necessary for them to testify in order to maintain their places."

The language used by counsel was highly improper, and for the use of it the speaker deserved the rebuke of the court. The rebuke given, if it may be called such, was too mild to impress the jury with a proper conception of the wrong done.

We have repeatedly condemned statements before juries without evidence to support them, and called attention to the duties of courts in such cases. In *Kansas City, etc., R. Co.* v. *Sokal*, 61 Ark. 137, we said: "Arguments by counsel of the evidence adduced and the law as given by the court are allowed only to aid them (the jury) in the discharge of their duty. Within these limits counsel may present their client's case in the most favorable light they can. When they go beyond them, and undertake to supply the deficiences of their client's case by assertions as to facts which are unsupported by the evidence, or by appeals to prejudices foreign to the case, they travel outside of their duty and right, and abuse the privilege of addressing the jury by using it for a purpose it was never intended to accomplish; for such assertions or appeals can serve no purpose except to mislead the jury and defeat the ends of the law in requiring them to confine their consideration to the evidence adduced and the law embodied in the instructions of the court. Hence it is the obvious duty of courts, in furtherance of the object of their creation, to prevent such assertions or appeals, or, when made, to remove their evil effects, so far as they can; and attorneys, in the making of them, if they are calculated to prejudice the rights of parties, are guilty of a violation of the law, of an abuse of their privileges, of conduct unfair and unbecoming to their profession, and should be promptly and sternly rebuked by the courts, and, if need be, punished."

"Ordinarily," it is said, "an objection by the opposing counsel, promptly interposed, followed by a rebuke from the bench, and an admonition from the presiding judge to the jury

to disregard prejudicial statements, is sufficient to cure the prejudice; but instances sometime occur in which it is not sufficient." As to whether it was sufficient in this case remains for us to determine.

The argument in the case before the jury was concluded by G. W. Murphy, one of plaintiff's counsel. At the conclusion of his speech a large crowd of citizens were collected in the court room, and some of them began to applaud his closing remarks in the presence of the jury. "Thereupon, immediately, and while the audience were applauding, the court reprimanded the audience for the same, and instructed the sheriff to ascertain, if possible, who the parties were, and directed the jury not to allow such applause to influence them in rendering their verdict." But no improper remarks or conduct are imputed to the eloquent counsel who elicited the applause.

Seventh. Are the damages recovered excessive? The plaintiff was two and a half years old at the time of the accident. His expectancy in life at that time could not have reasonably exceeded forty-eight years. For eighteen and a half years of this time he was and will be a minor. His earnings during this time of his minority belong to his parents. In return they are bound to care for, feed, clothe, and defray his expenses during his infancy. Consequently, he was not entitled to recover anything on account of such earnings and expenses. All that he was entitled to recover was his probable loss of earnings after he reached the age of twenty-one years, which he would have acquired had he not been injured, and the increased expenses he will probably incur on account of his injury after that time, and damages for past, present, and future pain from his injury, and for personal disfigurement; no exemplary damages being sued for, or asked for or allowed in the instructions to the jury. His right to recover for probable loss of earnings and increased expenses is limited to twenty-nine and a half years, the probable remainder of his life after the twenty-first year of his age. For this probable loss of earnings, and increased expenses, and for pain and disfigurement, he recovered $40,000. A part of this, the amount allowed for probable loss of earnings and increased expenses, should have been estimated as commencing to accrue eighteen and a half years after the accident—the

twenty-first year of his age—and the value of the use of the money allowed for such loss and expenses during his minority should also have been taken into consideration. The presumption is, had he not been injured, his capacity to earn after his twenty-first year would not exceed that of ordinary men. Taking into consideration all these facts and the uncertainties of life, we think that the damages recovered are excessive. In arriving at this conclusion we have not left out of consideration the pain and disfigurement of the boy, both of which are elements of compensatory damages. For them money is no adequate recompense; but, as the law can afford no other redress, it allows the sufferer to recover such an amount therefor as a jury, dispassionately considering all the circumstances, may reasonably deem sufficient. Measuring plaintiff's right to damages for pain and disfigurement by this standard, we still think the damages recovered are excessive, and appear "to have been given under the influence of passion or prejudice." In view of this fact, we think the improper remarks of counsel were prejudicial, notwithstanding the admonition of the court to the jury. If they did not excite the prejudice, they were calculated to increase it.

For the improper remarks of counsel and the excessive damages, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

OPINION ON REHEARING.

Delivered December 10, 1898.

BATTLE, J. Appellee asks the court to allow him the privilege of remitting so much of the damages recovered in this action as renders them excessive, and that the judgment as to the residue be affirmed.

The theory upon which a remittitur is allowed is that the appellant has no just complaint save that the damages are excessive, and that, inasmuch as the appellate court can say that the given verdict is excessive, it can designate an amount that will not be, and give the successful party the option to remit the excess or submit to a new trial.

The judgment in this case was reversed on account of the

improper remarks of appellee's counsel, and because the dama-
ges recovered were excessive.  We cannot say that the ap-
pellee's right to recover is free from doubt.  The testimony is
conflicting, and to assume that appellee had the unquestionable
right to a verdict for some amount we would be compelled to
hold that much of the evidence was entitled to no credence.
The strongest contention of appellee's counsel is that he was
injured by the engine, and that the train could have been
stopped after he was knocked down and before the engine
reached him.  But this contention is principally founded upon
the opinions of witnesses, which were based upon what they
saw of the child under the cars, when they were from thirty-
five to fifty yards distant, and while the train was moving from
six to twelve miles an hour, and much excitement prevailed, and
many were passing before or near them, and much existed to
prevent the accuracy of their observation.  As for ourselves,
we are not assured as to what part of the train caused the
injury, and that appellee's contention is correct.  But it can
serve no useful purpose to review the evidence at length.  As
the cause will be remanded, it may not be proper to do so.  It
is sufficient to say that we do not think that this case comes
within the rule which allows a remittitur to be entered.

The petition of appellee is denied