## CHARLES LUNDEEN v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 6, 1918.

No. 21,010.

**Railway — injury to an invitee on the track.**
    1. Defendant undertook to deliver at the Minneapolis flour mills freight shipped over its line, and included in the charges collected therefor the charge for switching its cars from its yards to the mills over the track of the Railway Transfer Company. It procured the transfer company to do this switching and permitted that company to inspect the cars before accepting them. This course of conduct had continued for many years. *Held* that plaintiff, the inspector for the transfer company, was at least an invitee upon the premises of defendant while making such inspection.

[1]Reported in 169 N. W. 702.

Same — snow and ice — negligence — questions for jury.

2. Defendant removed snow from certain tracks within its yard limits by running a snow-plow over them which piled the snow in a hard ridge on each side of the tracks. It permitted these ridges to remain for several weeks. Plaintiff while traveling along a path on one of these ridges, in the performance of his duty, slipped on a patch of ice hidden from view by newly fallen snow, and slid under a passing train. *Held* that the question of defendant's negligence, and of plaintiff's contributory negligence, was for the jury.

Action in the district court for Hennepin county to recover $25,000 for personal injuries. The answer alleged negligence on the part of plaintiff and that he knew, appreciated and assumed the risks. The case was tried before Fish, J., who at the close of the testimony granted defendant's motion for a directed verdict. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Larrabee & Olson,* for appellant.

*Cobb, Wheelwright & Dille* and *George Hoke,* for respondent.

TAYLOR, C.

Action for personal injuries in which the court directed a verdict for the defendant and the plaintiff appealed from an order denying a new trial.

Defendant seeks to sustain the ruling upon three grounds: (1) That plaintiff was a mere licensee upon its premises to whom it owed no affirmative duty to keep them free from danger; (2) that there is no evidence of negligence on the part of defendant; (3) that plaintiff was guilty of contributory negligence as a matter of law.

By arrangement between defendant and the railway transfer company, the transfer company switches cars of defendant destined for the flour mills in the city of Minneapolis from the yards of defendant in that city over the tracks of the transfer company to the mills. Defendant places these cars upon certain designated tracks in its yards from which they are taken by the transfer company, but before accepting or moving the cars the transfer company inspects them at the point on defendant's tracks where they have been placed by defendant. This course of conduct has been followed for a long term of years. On the day of the accident, February 20, 1917, defendant placed a number of cars upon the desig-

nated tracks in its Cedar Lake yard for the purpose of having them switched to the mills by the transfer company, and also placed a number of other cars upon the designated tracks in its yard "P" located a short distance east of the Cedar Lake yard, for the same purpose.

Plaintiff was an employee of the Minneapolis & St. Louis Railway Company, but by an arrangement between that company and the transfer company it was his duty to inspect these cars for the transfer company, and, so far as this case is concerned, he stands in the position of an employee of the transfer company. Plaintiff inspected the cars in the Cedar Lake yard and then started to go to yard "P" to inspect the cars in that yard. The snowfall that winter had been unusually heavy. The government weather records for Minneapolis received in evidence show that the snow was 9½ inches in depth on January 20 and that 22½ inches fell between that date and February 1. Defendant ran a snow-plow over its tracks after each snow storm which piled the snow in a hard ridge along each side of the track. It removed this ridge in its Cedar Lake yard and in its yard "P," but did not remove it from the side of the tracks connecting the two yards. Among the tracks connecting the two yards was a track known as the "run-around" track over which cars were moved less frequently than over the other tracks. There was a path used by employees of defendant extending from the switching tracks in the Cedar Lake yard to this "run-around" track and then along this track between the rails toward yard "P." The evidence will sustain a finding that there was also a path along the top of the snow ridge at the side of this "run-around" track. On the day preceding the accident there had been a snowfall which had covered the paths and yards with loose, light snow to the depth of 2½ inches. When plaintiff started from the Cedar Lake yard to go to yard "P," he followed the path to the "run-around" track, and finding a string of cars passing along that track he then proceeded along the path on the top of the snow ridge at the side of that track. He had proceeded less than two rail lengths when he slipped and slid down the bank under the moving cars and sustained injuries which resulted in the amputation of one leg and of a part of the other foot. Subsequent investigation disclosed that at the place of the accident a coating of ice, covered and concealed from view by the light snow of the day before, extended from the top of the snow

ridge down its sloping side to the rails of the track. There was testimony indicating that this ice had been formed by the freezing of water thrown upon the ridge, perhaps from the overflow pipe of a locomotive.

1. Defendant contends that the inspection of the cars made by plaintiff was made solely for the benefit of the transfer company; that no interest of defendant was served by such inspection; and that it follows that plaintiff was a mere licensee upon its premises to whom it owed no duty to keep such premises free from danger. We are unable to sustain this contention.

In consideration of the freight charges collected from the shippers, defendant entered into an engagement with them to deliver these cars at the mills, and the switching required in making such delivery was included in the service which it undertook to perform. Although the final switching was in fact done by the transfer company, this was by virtue of an arrangement between the two companies by which defendant procured the transfer company to perform a part of the service which defendant had engaged to perform. Defendant had engaged to perform the entire service and collected pay for the entire service and paid the transfer company for the part of the service performed by that company. Having assumed the duty of delivering these cars at the mills, defendant certainly had an interest in the doing of the switching which carried them to the mills, whether such switching was done by itself or by the transfer company. Conceding that the inspection made by plaintiff was made primarily for the protection of the transfer company, yet it was incident to and a part of the service rendered by the transfer company in completing for defendant the engagement entered into by defendant, and plaintiff while performing the duty of making such inspection was at least an invitee, and not a mere licensee, upon the premises of defendant. It follows that defendant owed him the duty to exercise ordinary care to keep its premises in such condition that he could perform his duties in reasonable safety. Corrigan v. Elsinger, 81 Minn. 42, 83 N. W. 492; Klugherz v. Chicago, M. & St. P. Ry. Co. 90 Minn. 17, 95 N. W. 586, 101 Am. St. 384; Eckert v. Great Northern Ry. Co. 104 Minn. 435, 116 N. W. 1024; Dahl v. Valley Dredging Co. 125 Minn. 90, 145 N. W. 796, 52 L.R.A.(N.S.) 1173;

Ingram's Admx. v. Rutland Ry. Co. 89 Vt. 278, 95 Atl. 544, Ann. Cas. 1918A, 1191.

2. The tracks in the Cedar Lake yard and in yard "P," and the tracks connecting these two switching yards are all within defendant's Minneapolis yard limits, and in constant use for moving, switching or assembling cars. By running its snow-plow over the tracks after each snow storm defendant piled the snow in a hard ridge immediately adjacent to and along each side of the several tracks. Defendant had removed these ridges and the snow between the tracks from yard "P" and the Cedar Lake yard, but had failed to remove either the ridges or the snow between the tracks from that portion of its yard lying between these two switching yards. Piling the snow in a hard ridge along and so near the track that there was no room for passage between the ridge and cars upon the track, and leaving it in that condition for several weeks, is the negligence charged. Defendant concedes that the facts were as stated, but contends that they will not justify a finding of negligence, and the trial court took the same view of the matter.

It is stated in Gibson v. Iowa Cent. Ry. Co. 115 Minn. 147, 131 N. W. 1057, that: "The general rule is that a railway company is not liable to its employees for injuries resulting from climatic conditions, such as ice and snow; but within its yard limits it must exercise a degree of care commensurate with the risks to prevent the accumulation of snow and ice in such quantity, form and location as to be a menace to the safety of its employees working in its yards." The rule there announced was followed and applied in Burdick v. Chicago & N. W. Ry. Co. 123 Minn. 105, 143 N. W. 115. In both cases the court sustained a finding of negligence in permitting snowbanks to remain in dangerous proximity to tracks within yard limits.

A distinction is suggested between those cases and the present case, on the ground that in those cases the injuries were sustained by members of a train crew, while the plaintiff in the present case was a car inspector, and not a member of a train crew. But the proper performance of his duties required plaintiff to travel from one switching yard to the other, and defendant owed him the duty to keep its premises in such condition that he could do so without being exposed to unnecessary danger. While insofar as a trainman is exposed to risks to which a car

inspector is not, the duty of the company to take precautions for his safety will differ from its duty to take precautions for the safety of the car inspector, yet its duty to take precautions for the safety of each and every employee is commensurate with the risks to which such employee is exposed in the performance of his duties. We think this rule applies to one occupying the relation to defendant that plaintiff occupied, and that the evidence made a question for the jury as to whether, under all the circumstances, defendant was chargeable with negligence which was the proximate cause of the injury.

3. Defendant also contends that in traveling along this snow ridge in close proximity to the moving cars, plaintiff was guilty of contributory negligence which bars him from recovering.

This ridge was 30 inches in depth at the place of the accident and its crest only 18 inches outside the sides of the moving cars, and defendant argues that plaintiff was negligent as a matter of law in traveling along the uneven path on its top so near the cars that the swaying of his body was likely to bring him in contact with them. This argument would be more persuasive if the accident had resulted from plaintiff coming in contact with the side of a car, but the accident did not happen in that way nor result from that risk. The accident resulted from the fact that a patch of ice, extending from the rails to the top of the ridge and which was hidden from view by the newly fallen snow, was of such form and in such location that when plaintiff stepped upon it he slipped and slid down upon the track. The question of contributory negligence is ordinarily for the jury, and only in clear cases is the court justified in determining it as a matter of law. Travel from one switching yard to the other seems to have been more commonly over or along the "run-around" track than over or along the other connecting tracks, for the reason that the other tracks were used as lead tracks over which cars passed more frequently than over the "run-around" track and for that reason were deemed more dangerous than the "run-around" track. Plaintiff followed the usual path to this track, and as a train of cars was passing over it, he then turned into the path on the ridge along which he and others had previously traveled. Whether under the circumstances he was guilty of contributory negligence in doing so, we

think was a question for the jury. From the facts different minds could reasonably and honestly draw different conclusions.

Order reversed.