## VIRGINIAN RY. CO. v. ARMENTROUT.
### No. 5504.

Circuit Court of Appeals, Fourth Circuit.

Nov. 21, 1946.

Fletcher W. Mann, of Beckley, W. Va. (John R. Pendleton, of Princeton, W. Va., and J. O. Atkinson and Walter C. Plunkett, both of Norfolk, Va., on the brief), for appellant.

R. G. Lilly and A. A. Lilly, both of Charleston, W. Va. (W. F. Damron and O. D. Damron, both of Logan, W. Va., on the brief), for appellee.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case presents the account of an extraordinary accident to a 13 month old baby who strayed from his parent's house to a railroad track 289 feet distant, and was there run over by a passing engine, losing his left arm above the elbow and his right arm above the wrist. Two issues of negligence on the part of the railroad were submitted to the jury: (1) that the engineer failed to give adequate warning of the approach of the engine and (2) that he failed to keep an adequate lookout and to save the child from injury after his presence on the track was observed and there was still time to stop the engine. The jury found a verdict for the plaintiff in the sum of $100,000, and the Railroad Company appealed, alleging that the judge erred in his instructions to the jury and in his refusal to set aside the verdict as excessive.

The evidence in support of the verdict may be summarized as follows: The accident happened in the morning of May 27, 1944. A few minutes before the event, the child was playing in the yard while various members of the family were in a nearby field and in the house which was located on a hill above the railroad track by the side of a public road. The baby wandered down the hill unobserved. When next seen he was in a crawling position on the track at or near the crossing, where boards with composition paving between had been placed. He was a very active and intelligent child. He started to walk at the age of 9½ months and to talk soon afterwards. On several prior occasions when he was close to the crossing in the care of an elder brother he would scream and try to pull away and go back home if an approaching train blew its whistle as it neared the crossing.

At the time of the accident the engine approached the crossing on the single track on a 7 degree curve around a bank 5 feet high to the left of the engineer and on an upgrade of 1 to 1½ per cent. The engine was 106 feet 8 inches long and weighed 915,000 pounds. It was backing with its tender in advance at a speed variously estimated from 10 to 20 miles an hour. The engineer was seated at the cab window on his left side of the engine with his back to the operating controls and brake levers. He was familiar with the crossing. He blew several toots on the whistle to attract the attention of members of his family in a house on a hill 1,500 feet from the crossing and as he passed he waved to them. The engine then passed the whistle post located 1,052 feet from the crossing. Later at a point 300 feet from the crossing the engineer was looking at and waving to persons on top of the bank and continued to do so until the engine was 150 feet from the crossing. The evidence is conflicting as to the giving of signals by whistle and by bell as the engine neared the crossing, but a number of witnesses testified on behalf of the plaintiff that no signals of any kind were then given. All the witnesses, however, agreed that the engine made a loud noise as it approached, which could be heard a long way off.

The engineer was the only person who saw the child on the track. He had a clear view of the crossing as he came around the curve. He said that he then saw an object on the track when the tender was 220 feet away, as disclosed by later measurements, but did not recognize it as a baby until the tender was 191 feet away. Then he saw that the child had his hands upon the track in a crawling position facing the tender. The child did not move. The engineer said that he used sand and made every effort to stop the train but was unable to do so before the end of the tender had gone 40 to 50 feet beyond the child who then lay between the tender and the engine.

The evidence offered by the Railroad as to distances was secured by an investigation and test made by the engineer and fireman and other employees of the Railroad after the accident. They drove the engine and tender to the place and took certain photographs and measurements to determine the distance from the crossing at which an object could be recognized by one in the en-

gineer's seat using a folded newspaper to represent a child. No test, however, was made to ascertain in what distance the engine could be stopped when going at the various speeds testified to by the witnesses.

The evidence on the part of the plaintiff tended to show that the engine could have been stopped after the engineer saw or should have seen the child. There was testimony, as above indicated, that the engineer's attention shortly before reaching the crossing was directed to persons on the bank adjoining the tracks; and that after the accident no sand was found on the track approaching the crossing; and an experienced locomotive engineer expressed the opinion that the engine, going at a speed of 10 to 15 miles an hour, could have been stopped in a distance from 35 to 75 feet and going at the speed of 18 to 20 miles an hour, could have been stopped in a distance from 75 to 95 feet. While there was opposing testimony offered by the defendant in this respect, it is not disputed that there was sufficient evidence to go to the jury on the second issue of negligence above mentioned.

█ We consider first the contention that the judge erred in charging the jury that the defendant was liable if the jury should find that the engineer failed to give the warning signals required by law, and should further find that this failure was the cause of the accident. There was evidence tending to show that the engineer failed to obey the provisions of Ch. 31, Art. 2, § 8 of the West Virginia Code which provides that a bell or whistle shall be sounded by an engineer or a fireman on a locomotive engine at a distance of at least 60 rods from the place where the railroad crosses any public street or highway, and be kept ringing or whistling for a time sufficient to give due notice of the approach of the train. This evidence was denied but an issue of fact was thereby raised. Hence there would have been no error in submitting it to the jury if it were decisive of the controversy; but the attack is directed to the succeeding part of the instruction wherein the jury were told that in order to fasten the liability on the defendant they must also find that the child was of sufficient mental capacity to understand the meaning of such signals so as to get off the track if they had been given. To this phase of the charge the defendant objects, and with good reason, upon the ground that it cannot be supposed that a child of 13 months would have had any understanding in the premises. It is argued that the child was unusually intelligent and on a number of occasions had manifested fear when the whistle of a passing train was blown; but these facts are so unsubstantial that they do not in the slightest way overcome the common knowledge that a baby of 13 months is not equipped with reasoning powers. The judge himself recognized the incapacity of the child, for he instructed the jury, correctly we think, that the child could not be guilty of contributory negligence or at fault in the eye of the law. See Prunty v. Tyler Traction Co., 90 W. Va. 194, 200, 201, 110 S.E. 570; Dempsey v. Norfolk & Western Ry., 69 W.Va. 271, 274, 71 S.E. 284, 34 L.R.A.,N.S., 682; Potts, Adm'r v. Union Traction Co., 75 W.Va. 212, 83 S.E. 918; Schoonover v. Baltimore & Ohio R. Co., 69 W.Va. 560, 566, 73 S.E. 266, L.R.A.1917F, 1, Ann.Cas.1913B, 964; Ewing v. Lanark Fuel Co., 65 W.Va. 726, 65 S.E. 200, 29 L.R.A.,N.S., 487; Nashville, Chattanooga & St. Louis Ry. v. Harris, 142 Ala. 249, 253, 37 So. 794, 110 Am.St. Rep. 29; St. Louis, Iron Mountain & Southern Ry. v. Denty, 63 Ark. 177, 185, 37 S.W. 719. The inconsistency of this instruction with that just mentioned needs no comment, for the incompetency which rendered the child incapable of contributory negligence would have rendered it unable to understand the statutory signals if they had been given. Indeed in the pending case the evidence of the engineer, the only witness of the child's actions before it was struck, shows that it was incapable both of contributory negligence and of the ability to care for its own safety, for not only did it crawl upon the railroad track but remained there motionless as the train came down upon it, although it must have seen the engine and heard the loud noise of its approach. For these reasons it was error to submit to the jury the issue of negligence based on the failure of the engineer to give the signals. Liability could not be based on a failure to give signals since the

failure was not the proximate cause of the injury. Beyel v. Newport News & Mississippi Valley R. R., 34 W.Va. 538, 540, 12 S. E. 532; Butcher v. West Virginia & Pittsburg R. Co., 37 W.Va. 180, 16 S.E. 457, 18 L.R.A. 519.

The second issue, as to the negligent failure of the engineer to stop the train after he saw the child, was, however, properly a matter for the jury's determination. The defendant's objection on this phase of the case is directed to certain critical comments offered by the judge in his charge upon the failure of the Railroad to make a test to determine the distance in which the train could be stopped and upon the refusal of the judge to grant one of the defendant's requests for instruction. The defendant desired to bring to the attention of the jury the practical difference, so far as the time consumed is concerned, between a test made with forewarning in cold blood and the actual performance of an operator when suddenly called upon to act in an emergency. In order to bring this matter to the attention of the jury, the defendant asked the court to grant the following instruction:

"The court instructs the jury that on the question whether the engineer should have seen plaintiff on the track in time to have stopped the engine before striking him the test is, not whether it was possible to stop the engine before striking plaintiff after it was possible to see him on the track, but whether the engineer used reasonable and ordinary care, under the operating condition then and there existing, to discover plaintiff on the track and stop the engine before striking him. This requires a sufficient amount of time and distance to enable the engineer to appreciate the dangerous situation of the plaintiff and to make an effective effort to avoid injury to him.

"On this question the jury may consider their view and observation of the place where the accident occurred, and all the evidence, facts and circumstances in the case relative thereto, including the size of the plaintiff and his position on the track, the size, weight and speed of the engine, the curvature and grade of the railroad track, the view of the engineer as he approached the point of the accident and the obstructions, if any, to such view, the fact that the engineer was on a moving object, and the inconvenience, if any, of the engineer by reason of his position in the engine moving backward in reaching and operating the necessary appliances to stop the engine."

The court refused to give this instruction and in the course of its charge called the jury's attention to the fact that the engine concerned in the case had been in operation until a few weeks before the trial and had in fact been taken to the scene of the accident four weeks after it had occurred and yet the defendant had made no test as to the engineer's ability to stop the engine when running at certain speeds at that particular place. In this connection the court said:

"* * * It seems to me, despite all the argument that has been made to the contrary, that the very best test as to the distance within which that engine could be stopped would have been to place the engine, going at the maximum speed, at the point where the object first could have been seen, and right at that point to apply every means to try to stop that engine and see whether it stopped. I don't see how anybody could have been hurt by such a test and it certainly would have given to this jury a better idea of whether or not the train could have been stopped than to have a half dozen people come and say, 'in my opinion it could', and another half dozen come and say, 'in my opinion it couldn't.' If the test had been made and the engine had stopped, then we would know. If the test had been made and it was impossible to stop the engine, we would also know then. But the test wasn't made and so we are without the benefit of that, although it was within the power of the defendant to make that test. If you believe that such a test would have been a valuable means of determining whether the engine could have been stopped or not, and since the defendant had it within its power to make that test and didn't make it, the law is that you may infer from that, that had the test been made, it would have resulted in a situation unfavorable to the defendant, and that is the reason why it wasn't made."

In our opinion, the rejection of the defendant's prayer when considered in connection with the remarks of the judge constituted prejudicial error. We do not ques-

tion the right of the plaintiff to comment on the failure of the defendant to make the test,[1] or of the court to discuss the evidence on the point so long as the jury were warned, as it was in this instance, that although the judge's charge on the law must be followed by the jury, his comments on evidence are not binding upon them. In the pending case, however, the jury may well have been misled for they were told that the law is that they might infer that the test was not made because the results would have been unfavorable to the defendant. Furthermore, the judge failed in the course of his remarks to comment upon the absence of the element of emergency, from a test staged after the event, although in the quoted request for instruction the defendant had called the attention of the court to the fact that some time would necessarily elapse and some distance would necessarily be covered before the engineer in the exercise of due care would realize the danger confronting him and take steps to avoid it. The importance of this point is emphasized in Stratton v. Bergman, 169 Va. 249, 254, 255, 192 S.E. 813, where reference is made to a booklet by J. C. Furnas and Ernest N. Smith (Simon & Schuster, 1935), entitled "Sudden Death and How to Avoid It". It contains calculations at p. 24 based on studies by the State Board of Public Roads of Rhode Island, which give the distances that vehicles moving at certain speeds will travel in the interval which necessarily elapsed between the time that the driver in control detects a danger and the time that he applies the brake. In a charge so argumentative and so adverse to the defendant as that outlined above, some comment on this feature of the case should have been made especially in view of the requested instruction.

Since the judgment must be reversed, we do not reach the appellant's contention that it was error on the part of the court to reject the motion for a new trial insofar as it was based on the large amount of the verdict which, it is said, was induced by improper instructions on the subject of damages. However, since the case must be tried again it will be of advantage to examine the pertinent part of the charge which was given in the following terms:

"* * * It was stated by counsel in his argument and I don't suppose there is any dispute about it—that the expectancy is more than sixty years, and during all that time he will have to go along without his arms. Now, you should recompense him, if you decide he is entitled to a verdict, for what you think he would naturally make during that period of time if he were an able bodied man. You should compensate him for his pain and suffering. You should compensate him to the extent that he is disabled and will probably be put to the expense of having somebody to help him. You should gather up all those elements of damage and you should compensate him fully in the best of your judgment for the injuries that he has sustained, without giving him any more than enough to compensate him. We don't have any other measure except money by which to compensate for injuries. Be fair to this defendant, but also be fair to the plaintiff and give him the full amount that he is entitled to recover, if you give him anything."

There can be no doubt that the child was the victim of a cruel accident and was entitled to substantial damages from the Railroad Company if its liability was established. The permanent nature of the injury, the pain, suffering and humiliation, the loss of earning power and the expenses flowing from disability during a long expectancy were all proper elements to be considered in making up the verdict. But the charge went further in that the jury were told that they should recompense the child for what they might think "he would naturally make during that period of time if he were an able bodied man". This was too sweeping, for under it the jury were free to include a sum equal to the earning power of an able bodied man during the period of 60 years. Such a calculation was relevant to the inquiry, but the jury should have been told that the estimated total was subject to certain deductions as follows:

1 Testerman v. Hines, 88 W.Va. 547, 107 S.E. 201; Trant, Inc., v. Upton, Adm'r, 159 Va. 355, 165 S.E. 404; Bell v. Kenney, 181 Va. 24, 23 S.E.2d 781; Ferguson v. Virginia Traction Co., 170 Va. 486, 197 S.E. 438.

(1) Under the West Virginia law which governs the case, the earnings of a minor child are the property of its parents. Taylor v. Chesapeake & Ohio Ry., 41 W.Va. 704, 24 S.E. 631. (2) The probable earning power of the child, handicapped as it was, should not be overlooked; and (3) the earning power of the amount of money allowed by the verdict should be taken into consideration in arriving at the amount of the award. Chesapeake & Ohio Ry. v. Kelly, Adm'x, 241 U.S. 485, 491, 36 S.Ct. 630, 60 L.Ed. 1117, L.R.A.1917F, 367; Dumphy v. Norfolk & Western Ry., 82 W.Va. 123, 95 S.E. 863, 10 A.L.R. 1152.

The judgment of the District Court will be reversed and the case remanded for a new trial.

Reversed and remanded.