## CHESAPEAKE & OHIO RY. CO. v. THOMAS.

No. 6435.

United States Court of Appeals Fourth Circuit.

Argued June 20, 1952.

Decided Sept. 3, 1952.

Paul, District Judge, dissented.

Charles E. Ford, Newport, Va., and Leigh D. Williams, Norfolk, Va. (Strother Hynes, General Atty., Richmond, Va., on brief), for appellant.

William L. Parker, Norfolk, Va., and Bernard M. Savage, Baltimore, Md., for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and PAUL, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Eastern District of Virginia, pursuant to a jury verdict, awarding damages to the plaintiff in the amount of $25,000.00. The action was brought under the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, on behalf of the surviving widow and one adult son, to recover damages for the death of the plaintiff's decedent, arising out of a contact between the decedent and an iron standpipe located adjacent to the defendant's railroad siding, while the decedent was acting in the course of his employment as a brakeman for the defendant.

A third party complaint was filed by the defendant against Southern Oil Stores, Incorporated, owner and operator of the standpipe, but the District Court ordered a separate trial for the issues involved in that action.

This appeal concerns the correctness of the District Court's submission to the jury of three questions: (1) The question whether the defendant had exercised ordinary care to provide a reasonably safe place for the plaintiff's decedent to work; (2) The issue of contributory negligence; and (3) The question whether the defendant was negligent in the movement or operation of its train. We think the first two were properly submitted, but that, in the light of all the evidence, the third question should not have gone to the jury.

The accident involved here occurred on August 29, 1949, in the defendant's 33rd Street Siding in Newport News, Virginia. On that day plaintiff's decedent was employed by the defendant as a brakeman in its yards. At about 10:35 A.M. a five-man crew, consisting of Conductor L. L. Irby, Fireman J. J. Brewer, Engineer O. R. Hudson, Brakeman A. L. McCravy, and the decedent, Clyde R. Thomas, undertook a movement to set off two order-notify box cars into the 33rd Street Siding. The cars were not to be spotted at any particular place on the siding but were to be located at any point Thomas wanted them, he being in charge of the operation.

The two box cars had been cut off from a string of cars, and the defendant's steam engine was moving them. The engine was operated by the fireman, Brewer. The cars were pulled in a westerly direction past the 33rd Street Siding switch, the brakeman, McCravy, gave a stop signal, threw the switch, and the engine and cars began to move eastward into the siding. At this time, Thomas was riding on the first rung of a ladder, three feet above the ground, on

the leading end of the lead car going into the siding. The engine was now pushing the cars.

The 33rd Street Siding serves the Southern Oil Stores, Incorporated, and five other consignees, and about 180 feet in the siding from the switch was a standpipe, owned and used by Southern Oil to unload gasoline from tank cars. This standpipe was constructed of 2½ inch galvanized pipe and stood vertically 15 feet 2½ inches in height. Projected from a swivel joint at the top of the vertical bar in a horizontal position was a pipe nine feet long, which when fully extended would reach to the center of the siding track.

When the standpipe was not in use, the horizontal portion was intended to be parallel with the siding track. When in use for unloading tank cars, it would be swung out across the tracks at a right angle, and a downspout screwed on to a nipple at the end. Although a chain to secure the pipe had been used before and after the accident, there was no device on the standpipe at the time of the accident to prevent its moving and fouling the track when not in use. The lower ball joint, however, was apparently fairly tight and the Southern Oil people had to use a 36-inch Stillson wrench to move the pipe. If one grasped the nine foot horizontal part, though, the added leverage made the task much easier and it could then be moved with one hand.

In any event, after McCravy threw the switch for the siding, both he and Thomas gave Brewer in the engine a "come ahead" signal. Brewer saw the signal and moved slowly into the siding, but, because of the curvature of the track, Thomas on the lead car passed out of his line of vision. McCravy remained at a point in line with the switch even though the engine passed him, and he testified that he could see part of Thomas' body at all times, at least enough to see any signal that Thomas might give him.

As the two cars continued to move easterly, with Thomas still riding the first rung of the ladder, the verticle nipple on the end of the nine foot horizontal portion of the standpipe came into contact with the top of the box car, at a point about six inches from the side on which Thomas was riding, causing the pipe to break, fall, and strike Thomas, and leaving a semicircular indentation at the point of contact on top of the car. Thomas was knocked off the car by the falling pieces of broken pipe, and fell against a wire fence located adjacent to the siding. Brewer in the engine saw no part of the accident, because of the track curvature and the over-hang of the cars, but he heard McCravy at the switch shout, turned around, and immediately applied the brakes. Thomas died as a result of his injuries.

■■ Under the Federal Employers' Liability Act, the railroad employer is required to exercise reasonable or ordinary care to provide its employees with a safe place in which to work. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. And this obligation extends to premises or objects owned by a customer serviced by the railroad. Ellis v. Union Pacific R. Co., supra, Terminal Railroad Ass'n v. Fitzjohn, 8 Cir., 165 F.2d 473, 1 A.L.R.2d 290. We think there was sufficient evidence of the defendant's noncompliance with this duty to warrant submission of the issue to the jury.

■ It is admitted that Hudson, who was acting as fireman at the time of the accident, had seen the standpipe fouling the track sixty days prior to the accident, at which time he was moving a single box car, with Thomas, the decedent, riding the leading end. Another witness testified that he had seen the standpipe fouling the track "four, five, or possibly six times." Of course the defendant produced a number of witnesses who had never seen the standpipe out of its proper position but the jury was free to draw what inference it wished from such conflicting testimony.

■ There was also conflicting and somewhat confused testimony as to the readiness and ease with which the horizontal part of the standpipe could be

moved. Certainly moving it from the ground was quite difficult, requiring a large wrench, but if one grasped the nine foot horizontal portion itself, the turning was apparently effortless. The defendant claims that the ball joint in the vertical part of the standpipe was fastened tight by screws, but there is no evidence as to whether these screws were ever adjusted or kept tight. Moreover, there is no evidence as to how tight or loose the swivel joint, at the top of the vertical pipe where it joined with the horizontal part, was maintained.

There is also some question as to what purpose the chain, which had been fastened from the wire fence to the standpipe until a year prior to the accident and which has now been replaced, served, and one might infer its necessity to prevent fouling of the track from the very fact of its existence.

These doubts and unexplained areas are well within the province of the jury. "It is not the function of a court to search the record for conflicting circumstantial evidence * * * to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences." Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520.

■ The same reasoning applies to the issue of contributory negligence, especially since, under the Federal Employers' Liability Act, 45 U.S.C.A. § 53, the contributory negligence must be the sole proximate cause of the injury to be a complete bar to recovery. As the District Court correctly charged, anything less would merely serve to diminish the amount of damages recoverable.

■ We will not gainsay that there is considerable evidence upon which a finding of contributory negligence might be based. Thomas had seen the standpipe fouling the track only sixty days before the accident and perhaps should have been on notice as to the possibility of such a situation occurring again. Yet it is a compelling inference that he did not see the standpipe extended out over the track, or if he did, that he at least gave no stop signal.

There is some evidence, however, that the horizontal part of the standpipe was not at right angles to the track at the time of the accident, but slanted at a lesser angle. If it had been at right angles, the nipple would not have struck the top of the box car six inches from the side nearest the pipe, but more nearly the middle of the car. It is quite possible that this slant made the horizontal pipe more difficult to see, and that Thomas could have less readily observed that it was fouling the track.

The evidence, moreover, indicates that Thomas' primary attention was probably directed at seeing that the siding track was clear of chocking blocks that might derail the cars, although this did not, of course, diminish his overall duty to watch out for all obstructions. Nevertheless, when "the presumption that the deceased was actually engaged in the performance of those duties and exercised due care for his own safety at the time of his death" is added to this evidence, Tennant v. Peoria & P. U. R. Co., supra, 321 U.S. at page 34, 64 S.Ct. 412, 88 L.Ed. 520, we cannot say that the inference the jury drew was unreasonable.

■ When we turn to the question of the movement and operation of the train, however, we must come to a different conclusion. The District Court instructed the jury that if they found that the defendant failed in its duty to exercise reasonable care in this movement and operation, "so as to provide in a reasonable manner for the safety of its employees, including Mr. Thomas," and that if they found such failure to be a proximate cause of his injuries, they should find for the plaintiff. We do not think this issue should have been submitted to the jury. From a careful consideration of all the evidence and testimony before the District Court, we cannot find anything which could support a reasonable inference that negligence, if any, in the performance of such a duty was the proximate cause in whole or in part of the decedent's injuries.

We reach this conclusion on the basis that the decedent, Thomas, gave no signal

which could have been relayed by McCravy at the switch to the engineer, Brewer. The plaintiff attempted at the trial to show that McCravy was not always where he could see Thomas and hence might have missed a signal, but we do not think that even an inference to that effect has been established. McCravy said over and over again in his testimony that he kept Thomas in his sight at all times. The curvature of the track did not affect his vision, for he stated that he stepped back from the switch in order to keep Thomas in view.

It is further suggested by the plaintiff that McCravy had only part of Thomas' body in view, but there is no proof at all that this was not enough to enable him to see any signal.

This reasoning, of course, is based primarily on the testimony of one witness, whom the jury might have believed or disbelieved as it wished. But the simple act of disregarding evidence of no signal does not thereby create proof that one was given. There is not a scintilla of evidence in the record that any signal was made by Thomas.

■ The Federal Employers' Liability Act does not make a railroad company an absolute insurer against personal injuries suffered by its employees. There still must be proof of negligence, and that negligence must be in whole or in part the proximate cause of the injuries. 45 U.S.C.A. § 51; Wilkerson v. McCarthy, 336 U.S. 53, 61–62, 69 S.Ct. 413, 93 L.Ed. 497; Brady v. Southern R. Co., 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Virginian Ry. v. Armentrout, 4 Cir., 158 F.2d 358. The conduct involved here does not meet this statutory requirement for liability.

It seems hardly necessary to spell out this reasoning. The plaintiff contends that McCravy should have been between the engineer, Brewer, and Thomas, so that Brewer could have seen any signals that McCravy might have relayed from Thomas without having to turn his head. The plaintiff further argues that the engineer not only had to turn around but, because of the noise of the steam engine, McCravy had to shout when he finally did give a stop signal upon seeing Thomas fall. But such careless conduct had no causative effect upon the injuries here. If no signal was given, the inference that it might have been relayed negligently is wholly irrelevant.

Moreover, it is quite evident that, once the stop signal was shouted by McCravy, the engineer instantaneously braked the train and everything possible was done to alleviate the situation.

■ Since the jury could have based its finding of negligence on this ground as well as on the other one charged, it being a general verdict, the instruction was prejudicial to the defendant and the case must be remanded for a new trial.

■ We are well aware of the line of cases decided by the Supreme Court on the functions of the court and the jury under the Federal Employers' Liability Act, and the proposition they establish that an appellate court must not take cases out of the jury's hands, or uphold such action, where any reasonable basis whatever for submission is revealed by the evidence. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. See, also, Moore, "Recent Trends in Judicial Interpretation in Railroad Cases under the Federal Employers' Liability Act," 29 Marquette L.Rev. 73. But this does not mean that such an appellate function is eliminated under the Act, or that reversal is not justified upon "a complete absence of probative facts to support the conclusion reached". Lavender v. Kurn, supra, 327 U.S. at page 653, 66 S.Ct. 744. To allow such a question as is here involved to reach the jury would be to mask a wisp of suspicion with the cloak of hard fact.

For the foregoing reasons, the judgment of the District Court will be reversed and the cause remanded for a new trial.

Reversed and remanded.

PAUL, District Judge (dissenting).

I am of opinion that the evidence in the case justified submitting to the jury the issue of whether there was negligence in the operation of the train which had a causal connection with the accident, and I think, therefore, that the judgment should be affirmed.