234 F.2d 441
 CHICAGO GREAT WESTERN RAILWAY COMPANY, Appellant,
v.
Walter R. CASURA and Swift & Company, Appellees.
SWIFT & COMPANY, Appellant,
v.
Walter R. CASURA and Chicago Great Western Railway Company, Appellees.
 Nos. 15484, 15528.
 United States Court of Appeals Eighth Circuit.
 June 7, 1956.
 
 Vance B. Grannis, So. St. Paul, Minn. (Grannis & Grannis, So. St. Paul, Minn., on the brief), for Chicago Great Western Ry. Co.
 Ira C. Peterson, Jr., Minneapolis, Minn. (Freeman, Peterson, Hoppe & Gaughan, Minneapolis, Minn., on the brief), for Swift & Co.
 James H. Geraghty, St. Paul, Minn. (James H. Mulally and Sanborn, Jackson & Rice, St. Paul, Minn., on the brief), for Walter R. Casura.
 Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 At all times pertinent to the issues here involved Swift & Company owned, maintained and operated an extensive meat packing plant at South St. Paul, Minnesota. Appurtenant to and, in effect, a part of this establishment, there were many railway spur tracks and switching tracks.
 
 
 2
 At and for many years prior to January 14, 1954, the Chicago Great Western Railway Company had performed all the railway switching service at this plant and in the adjacent stockyards industrial area at South St. Paul.
 
 
 3
 As a part of its plant at South St. Paul, Swift & Company has a building which is variously referred to in the record as a power house, ice house or freezer house. This building is served by a railway spur track which leads into the building from the north. This spur track runs in a general northerly and southerly direction. At a point approximately fifty or sixty feet north of the north end of this building the spur track is traversed at right angles by a cattle runway varying in width from fourteen to nineteen feet. By means of this runway cattle are driven from pens to the west to a ramp leading to the killing floor in the packing plant. This cattle runway is enclosed on either side by a board fence. To enable the train equipment to switch cars into and out of the ice house, gateways are cut through the enclosed runway and gates have been installed. When the runway is in use these gates are closed, forming a part of the runway enclosure, but when cars are to be switched into or out of the ice house these gates are opened so as to clear the spur track. There are two parts to each of these gates and they are referred to in the record as the southwest gate, the southeast gate, the northwest gate and the northeast gate. These gates are on hinges and open out from the runway. The runway across the tracks and the ground around the gates were paved with concrete. To hold the gates in place when open or shut there were iron bars on each gate to be dropped down to the concrete. There were no holes in the concrete into which these bars could be pushed. The lower end of the bars simply rested on the concrete pavement. These gates, as well as all the real estate under and around the spur track in question, were wholly owned and exclusively maintained and operated by Swift and Company. Whenever any switching was done over this spur track Swift & Company employees always opened and closed the gates, as well as the door to the ice house.
 
 
 4
 Walter R. Casura, appellee herein, who was plaintiff below, had been in the employ of the Chicago Great Western Railway Company for more than thirty-five years and during the twenty-five years immediately prior to January 14, 1954, had been employed as a switch foreman and on the date here in question he was so employed. Pursuant to his duties as switch foreman he went with his switching crew to the office of the Swift & Company yardmaster and was advised that there were four empty tank cars in the ice house which Swift & Company desired removed, and two loaded cars to be moved into the ice house in place of the empties to be removed. To enable this switching movement to be made the Swift & Company yardmaster, a Mr. Johnson, opened the gates as was his custom and duty. The switching crew coupled the two loaded cars ahead of the engine and pushed them ahead of the engine south toward the ice house, passing through the open gateways. Mr. Casura walked along the cars as they were being pushed into the ice house, stepped inside the building and saw that the coupling was made between the full tank cars and the empty cars in the building. He then gave the signal for the six cars to be pulled out and walked in a northerly direction along the track on the west side of the cars which were being pulled out. After he passed the southwest gate onto the runway a moving car came in contact with the southwest gate, splintering it, and part of the wrecked gate struck him on the right hand side of the body just above the hip, inflicting serious injuries.
 
 
 5
 Walter R. Casura brought this action against both the Chicago Great Western Railway Company and Swift & Company to recover damages for his injuries, alleging that his injuries were caused by '* * * the negligence of defendants and each of them, in negligently placing across said track a gate that was defective and unsafe, and in negligently failing to provide a good and sufficient fastening for said gate when it was opened to allow cars to pass through and in negligently failing to inspect said gate, and on the part of defendant, Chicago Great Western Railway Company, in negligently pulling said cars along said track and through said gates at an unsafe and negligent rate of speed and in negligently failing to furnish plaintiff a safe place to work.' Each of the defendants answered separately. The Chicago Great Western Railway Company denied all allegations of negligence and affirmatively pleaded that the accident was caused solely by the negligence of plaintiff or by the combined negligence of plaintiff and Swift & Company. Swift & Company, in its answer, denied all allegations of negligence and affirmatively pleaded contributory negligence on behalf of plaintiff. Cross claims were also filed by the Chicago Great Western Railway Company against Swift & Company and it was alleged that Swift & Company was liable to indemnify the Chicago Great Western Railway Company for any and all damages which may have been sustained by plaintiff and which might be awarded him against the Chicago Great Western Railway Company. Swift & Company filed a cross claim charging that plaintiff's injuries were caused solely by the negligence of the Chicago Great Western Railway Company and it was alleged that the Chicago Great Western Railway Company was liable to Swift & Company for indemnity or contribution, as the case might be, for all damages which might have been sustained by plaintiff and which might be awarded plaintiff against defendant Swift & Company.
 
 
 6
 On the various issues thus joined the action was tried to a court and a jury. At the close of all the evidence each of the defendants moved for a directed verdict. The motion of defendant Chicago Great Western Railway Company was based upon the alleged insufficiency of the evidence to prove negligence on its part which caused, in whole or in part, plaintiff's injuries, and upon the further ground that:
 
 
 7
 '* * * the evidence conclusively shows that the gate in question was under the exclusive control in every respect of the defendant Swift & Company and that the defendant Chicago Great Western Company neither had any notice nor is there any evidence from which the jury could find they should have had any notice or knowledge of any defective condition of the gate in question.'
 
 
 8
 The court reserved ruling on these motions and the case was submitted to the jury on instructions to which as given no exceptions were saved. The Chicago Great Western Railway Company in its motion for judgment notwithstanding the verdict alleged:
 
 
 9
 'That in the event the plaintiff is entitled to any judgment, the defendants herein are not in pari delicto and any injuries or damages suffered by the plaintiff are solely the result of the negligence of the defendant, Swift & Company.
 
 
 10
 'That in the event the plaintiff is entitled to any judgment, the defendants herein are not in pari delicto and the negligence of the defendant, Swift & Company, is the primary, active and dominant cause of the plaintiff's injuries or damages.'
 
 
 11
 In their motions for judgment notwithstanding the verdict both the Chicago Great Western Railway Company and Swift & Company charged that the court erred in refusing requested instructions on the question of contributory negligence, but the record fails to disclose that any objections or exceptions were saved to such refusal. The jury returned a verdict in favor of plaintiff and against both defendants on all the issues and assessed his damages at $38,000.
 
 
 12
 Defendant Chicago Great Western Railway Company seeks reversal on substantially the following grounds: (1) there was no evidence of any negligence of the railway company which was the proximate cause of plaintiff's injuries; (2) the negligence of Swift & Company was the primary cause of plaintiff's injuries; (3) the trial court erred in refusing to allow defendant railway company sufficient time to call as its witness Dr. Donovan McCain; (4) the trial court erred in refusing to submit the issue of plaintiff's contributory negligence to the jury; (5) the verdict is excessive and is the result of passion and prejudice; (6) defendant railway company was deprived of a fair trial because of the misconduct of counsel in his closing argument to the jury. Swift & Company charges error in that (1) the evidence does not sustain the verdict against Swift & Company; (2) the railway company is not entitled to indemnity against Swift & Company; (3) Swift & Company is entitled to a new trial because of the court's refusal to submit the question of plaintiff's contributory negligence to the jury and because the verdict is excessive and appears to have been rendered by the jury while under the influence of passion and prejudice.
 
 
 13
 We think a number of these contentions may be put aside because of the condition of the record. Both defendants urge that the court erred in refusing to submit the question of plaintiff's contributory negligence to the jury. The record shows that the court fully instructed the jury and no objections or exceptions were taken to the instructions as given. In its instructions the court told the jury that:
 
 
 14
 'There is no evidence of contributory negligence here so your responsibility will be to seek an answer to the question: 'Has the preponderance of the evidence shown negligence proximately causing the accident as against Swift & Company and as against the Chicago Great Western Railway Company?"
 
 
 15
 Rule 51, Federal Rules of Civil Procedure, 28 U.S.C.A., provides, inter alia:
 
 
 16
 'No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.'
 
 
 17
 This rule contemplates giving the trial court an opportunity to correct the instructions if erroneous. Kansas City Public Service Co. v. Taylor, 8 Cir., 210 F.2d 3; Thompson v. Riggs, 8 Cir., 175 F.2d 81; Jack v. Craighead Rice Milling Co., 8 Cir., 167 F.2d 96. No objections having been interposed to the instructions as given, error therein cannot, for the first time, be urged in this court. As the instructions given were not excepted to by either party they became the law of the case. Quite aside from this, we have carefully considered all the evidence and are of the view that there was no evidence of contributory negligence on behalf of plaintiff, nor was there any evidence of any negligence on behalf of the switching crew or the train crew participating in this switching movement.
 
 
 18
 The Chicago Great Western Railway Company urges that the court erred in denying sufficient time for it to produce one Dr. Donovan McCain as its witness. After the case had been on trial for about three days and plaintiff had produced his testimony in support of his complaint, both defendants had submitted testimony in their defenses, and plaintiff had produced testimony in rebuttal, counsel for the Chicago Great Western Railway Company for the first time stated to the court:
 
 
 19
 'Your Honor, defendant Chicago, Great Western Railway has no more witnesses except Dr. McCain whom we intended to call. He, however, is in Federal Court in Minneapolis this morning, but we understand he will be available at 2:00 o'clock. Other than that we have no other evidence we intend to produce at this time.'
 
 
 20
 After a conference in chambers the following occurred in open court:
 
 
 21
 'The Court: We have been having a discussion here between Court and counsel about Dr. McCain's not being available to testify until 2:00 o'clock, and the Court told you, Mr. Grannis, that we couldn't wait for the testimony of Dr. McCain; that we are going to have to go ahead, is that right, Mr. Grannis?
 
 
 22
 'Mr. Grannis: That's correct.'
 
 
 23
 There was no showing that the witness had been subpoenaed and no statement as to what the witness, if present, would have testified. In the absence of some showing as to what the witness's testimony would have been we cannot assume that he was a material witness. The application was addressed to the discretion of the court and we cannot say that the court abused its discretion.
 
 
 24
 It is urged by the Chicago Great Western Railway Company that it was deprived of a fair trial because of certain remarks made by counsel for plaintiff in his argument to the jury. Apparently no objections were interposed to any part of counsel's argument until after the arguments had all been submitted. However, before the court instructed the jury, court and counsel held a conference out of the presence of the jury and in that conference counsel for the Chicago Great Western Railway Company, for the first time, interposed objections to certain portions of plaintiff's counsel's remarks in his argument to the jury. The statements objected to are fragmentary in nature and out of context. Counsel did not move for a mistrial but the court was requested to give instructions relative to each of these fragmentary statements objected to by counsel. This was the only remedy requested by counsel. These statements for the most part contained assertions with reference to the applicable law and insofar as they may not have been in all instances technically correct, the court's instructions correctly stated the applicable law, and it is the function of the court, and not counsel, to declare the law. These instructions, we think, may fairly be said to have responded to counsel's request to give cautionary instructions. Thus, for example, the court in its instructions advised the jury that:
 
 
 25
 '* * * it becomes the duty of the Court to instruct you as to what the law is, and I may say parenthetically it is the duty of the jury to accept the law as the judge gives it to them.
 
 
 26
 * * * * * *
 
 
 27
 'I believe as these counsel have told you in the course of their argument, the things they said are not evidence and if their recollection of the facts of what the various witnesses said does not correspond with your recollection you are to accept your recollection of those facts and not the recollections which counsel gave you. And any comments which counsel made about the law are not binding. You are to receive your knowledge of the law from the Court and solely from the Court's instructions.
 
 
 28
 * * * * * *
 
 
 29
 'Now, you shall not consider as evidence any statement of counsel made during the trial unless such statement was made as an admission or a stipulation conceding the existence of a fact or facts.'
 
 
 30
 The court specifically complied with the request of counsel and, as before observed, the instructions given, including those responsive to counsel's requests, were not excepted to.
 
 
 31
 By motions for a directed verdict submitted by both defendants at the close of all the testimony, defendants challenged the sufficiency of the evidence to sustain a verdict for the plaintiff and they urge as error the ruling of the court denying these motions. In considering the question of the sufficiency of the evidence we must view it in a light most favorable to the prevailing party. Such conflicts as there may have been in the evidence have been resolved by the verdict of the jury in favor of the plaintiff and we must assume that the jury found in favor of the plaintiff all facts which the evidence reasonably tended to prove, and in considering the sufficiency of the evidence plaintiff is entitled to the benefit of all such favorable inferences as may reasonably be drawn therefrom. If, when so considered, reasonable minds might reach different conclusions, then the case presented fact issues to be submitted to the jury and not questions of law to be determined by the court. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Wellshear v. Brown, 8 Cir., 231 F.2d 612; Chicago Great Western Ry. Co. v. Scovel, 8 Cir., 232 F.2d 952.
 
 
 32
 As against the Chicago Great Western Railway Company the question of liability must determined under the provisions of the Federal Employers' Liability Act. It was not an insurer of the safety of its employees, and to entitle plaintiff to recover it was incumbent upon him to prove that his injuries resulted in whole or in part from the negligence of the railway company. 45 U.S.C.A. § 51. It was the duty of the railway company in the instant case to exercise reasonable care to furnish plaintiff with a reasonably safe place in which to work. Here it is argued that it was guilty of no negligence in this regard because it was not responsible for the unsafe condition of the place in which plaintiff was employed at the time of receiving his injuries. This argument is based upon the fact that defendant Swift & Company owned, constructed and maintained the cattle runway, including the gateways therein, intersected by the railway track. The railway company made use of the premises as a place in which plaintiff was required to work and the mere fact that the railway company did not own and was under no primary obligation to keep this place in repair did not relieve it of the obligation to exercise reasonable care to furnish plaintiff a reasonably safe place in which to work. Terminal R. Ass'n of St. Louis v. Fitzjohn, 8 Cir., 165 F.2d 473, 1 A.L.R.2d 290; Chesapeake & Ohio Ry. Co. v. Thomas, 4 Cir., 198 F.2d 783; Albert Miller & Co. v. Wilkins, 7 Cir., 209 F. 582. In Terminal R. Ass'n of St. Louis v. Fitzjohn, supra (165 F.2d 475), this court said:
 
 
 33
 'Since plaintiff was an employee of defendant at the time of his injury the fact that the premises where plaintiff was sent to work did not belong to and were not under the control of defendant did not absolve defendant from liability for their unsafe condition.'
 
 
 34
 In Chesapeake & Ohio Ry. Co. v. Thomas, supra (198 F.2d 786), where the facts were somewhat similar to those in the instant case, the United States Court of Appeals for the Fourth Circuit, answering the contention that the carrier was not responsible for the unsafe condition of the place in which its employee was working at the time he received his injuries because the premises belonged to a customer being served by the railroad, said:
 
 
 35
 'Under the Federal Employers' Liability Act, the railroad employer is required to exercise reasonable or ordinary care to provide its employees with a safe place in which to work. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444. And this obligation extends to premises or objects owned by a customer serviced by the railroad. Ellis v. Union Pacific R. Co., supra, Terminal Railroad Ass'n v. Fitzjohn, 8 Cir., 165 F.2d 473, 1 A.L.R.2d 290.'
 
 
 36
 Plaintiff received his injuries because what is referred to in the record as the 'southwest gate' came in contact with the cars that were being switched and it manifestly came in contact with the moving car because it was not securely fastened when in an open position. In the instant case an inspection of these gateways would have disclosed that the iron bars which were utilized to hold the gates open simply rested on the flat surface of the cement and there were no holes in this surface into which the ends of the drop bars could be placed. It was also clear from an inspection that the gates were not otherwise held open and that they might readily have been held safely in an open position by hook and eye devices, or by providing holes in the cement to receive the ends of the bars. An inspection would also have shown that the bars were bent at the ends. No such inspection was made by the railway company and we think the jury, under the evidence, viewed in a light most favorable to the plaintiff, was warranted in believing not only that the place where plaintiff was required to work was not a safe place, but that the railway company failed to exercise ordinary care to discover the unsafeness of the place in which plaintiff was required to work and to use ordinary care to have it made into a reasonably safe place.
 
 
 37
 Swift & Company was the owner of this property and constructed the cattle runway and the gateways therein. It, and it alone, owned, controlled and maintained the property. The railway company entered the premises only on its permission and invitation. So far as the gateway is concerned, it was maintained for the use of the railway company and its employees. The plaintiff, as an employee of the railway company, was an invitee on this property and it was the duty of its owner to exercise ordinary care to keep it in a reasonably safe condition. Lundeen v. Great Northern Ry. Co., 141 Minn. 180, 169 N.W. 702; Larson v. Red River Transp. Co., 111 Minn. 427, 127 N.W. 185; Klugherz v. Chicago, M. & St. P. Ry. Co., 90 Minn. 17, 95 N.W. 586. Whether or not Swift & Company was negligent in this regard was, under the evidence, a question of fact to be decided by the jury. Carr v. W.T. Grant Co., 188 Minn. 216, 246 N.W. 743; Tierney v. Graves Motor Co., 185 Minn. 114, 239 N.W. 905; Klaman v. Hitchcock, 181 Minn. 109, 231 N.W. 716; Williams v. Dickson, 122 Minn. 49, 141 N.W. 849; Moore v. Townsend, 76 Minn. 64, 78 N.W. 880. We conclude therefore that the court properly denied defendants' motions for a directed verdict.
 
 
 38
 It is urged by both defendants that the verdict is excessive. The verdict is large but it is not our province to substitute our judgment for that of the jury, and the trial court denied defendants' motions for a new trial based partly at least on the claim that the verdict was excessive. We have consistently held that in a tort action, at least where the verdict is not such as has been designated by the United States Supreme Court as 'monstrous', or such as to shock the judicial conscience, the question of the excessiveness of the verdict is to be determined by the trial court on motion for new trial and cannot be considered as ground for reversal. Glendenning Motorways v. Anderson, 8 Cir., 213 F.2d 432, and cases there cited.
 
 
 39
 Subsequent to the entry of judgment each of the defendants filed a motion charging that it was not in pari delicto with its co-defendant but that the other defendant had been guilty of the primary, active and dominant negligence resulting in plaintiff's injuries, and each sought to be relieved of liability, or indemnified. The motions were denied and each of the defendants prosecute appeals from this decision of the court.
 
 
 40
 As has been observed, plaintiff charged both defendants jointly with negligence in the maintenance of the premises embodying the crossing of the railway track over the cattle runway and he charged the railway company separately with failure to exercise reasonable care in providing him with a safe place in which to work. It appeared by the undisputed evidence that Swift & Company constructed, owned, controlled and maintained the gates at this crossing. The railway spur track could be used and was used only by permission and at the invitation of Swift & Company. The injury suffered by plaintiff resulted from the fact that the southwest gate, which at the time in question was opened by the yardmaster of Swift & Company, was not securely fastened open. Swift & Company opened it and it was its duty to securely fasten it, or at least to exercise ordinary care in that regard. When plaintiff was hit he was hit by a part of Swift & Company's broken gate, and but for the failure of Swift & Company properly to construct, maintain and operate this gate the accident could not have happened. The only negligence of the railway company consisted of its failure, by inspection or otherwise, to discover and have remedied the condition which resulted from the primary negligence of Swift & Company. In these circumstances we are of the view that under the law of Minnesota the railway company was entitled to indemnity against defendant Swift & Company. Fidelity & Casualty Co. of New York v. Northwestern Tel. Exch. Co., 140 Minn. 229, 167 N.W. 800; Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 37 A.L.R.2d 1399.
 
 
 41
 In Fidelity & Casualty Co. of New York v. Northwestern Tel. Exch. Co., supra (140 Minn. 229, 167 N.W. 801), the applicable Minnesota law is succinctly stated as follows:
 
 
 42
 'Generally, one of two joint tortfeasors cannot have contribution from the other. But there are exceptions to this rule. One exception arises where although both parties are at fault and both liable to the person injured, yet, they are not in pari delicto as to each other, as where the injury results from a violation by one of a duty which he owes to the other, so that as between themselves, the act or omission of the one from whom indemnity is sought is the primary cause of the injury. This exception is reasonable and well recognized.'
 
 
 43
 In the foregoing case an electric company was allowed full indemnification for damages it paid to an employee who was injured under the following circumstances: The electric company used the poles of the defendant telephone company at a fixed charge. Each company strung and maintained its own wires, which were customarily so securely attached to the poles so as to sustain the weight of a man standing thereon. Employees of both companies used all of the wires as a footing in going up and down the poles. The employee of the electric company, when using a wire of the defendant telephone company for this purpose, fell because the wire was insecurely fastened. The Court held that under the above circumstances, even though both defendants were in fact negligent as to the plaintiff, the primary cause of the plaintiff's injuries was the negligence of the defendant telephone company and, therefore, they were required to bear the full responsibility.
 
 
 44
 In Waylander-Peterson Co. v. Great Northern Ry. Co., supra (201 F.2d 416), full indenmity was allowed the Great Northern Railway Company against the Haylander-Peterson Company, where the circumstances were strikingly similar to those in the instant case. In the course of the opinion in that case we quoted with approval from the decision of the trial court as follows:
 
 
 45
 "The third party defendant urges, therefore, that under the Minnesota law the Great Northern Railway Company at most is only entitled to recover one-half of the amount which the jury returned in favor of Lawrence against the railroad company. Apparently it is the third party defendant's position that, in view of the Minnesota rule of contribution, Minnesota does not recognize any recovery as between joint tortfeasors other than contribution except in case of an express contract of indemnity. But the Minnesota rule of contribution as between joint tortfeasors does not negative the principle of indemnity on other grounds. That is, where the parties are not in paridelicto and the injury results from the acts of one whose negligence is the primary, dominant cause of the injury, and if such negligence exposes another to liability, the former is liable to the latter in the full amount of the damages incurred by such act. The teachings of Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N.W. 698, and Fidelity & Casualty Co. (of New York) v. Northwestern Telephone Exchange Co., 140 Minn. 229, 167 N.W. 800, fully sustain this view. Here, these parties were not in pari delicto. The railway company had no control over the construction of this bridge or of the workmen who were employed thereon. The railway company was required to operate its trains under the bridge and to direct its trainmen to perform their duties in and about the bridge. The repeated instances of timbers and debris falling from the bridge, which rendered the railway company liable under the Federal Employers' Liability Act, was a condition which the railway company did not create. Its liability arose because of the non-delegable duty which rested upon it to exercise reasonable care to furnish Lawrence a safe place to work. Any negligence attributed to it so as to render it liable to Lawrence arose by the wrongdoing of those in charge of the construction of this bridge. The primary duty rested upon Waylander-Peterson Company to perform its work on the bridge so as not to endanger the workmen who were required to work in proximity thereto. Its neglect was the primary, active cause of Lawrence's injuries. The railroad company's negligence, as between the parties, was secondary and passive."
 
 
 46
 The primary duty to maintain the crossing gates and to open and securely keep them open during the switching movement here involved, was that of Swift & Company and but for its failure so to do the accident would not have happened.
 
 
 47
 The judgment for $38,000 against both the Chicago Great Western Railway Company and Swift & Company is affirmed and we conclude that the Chicago Great Western Railway Company is entitled to judgment against Swift & Company for the full amount of the judgment rendered in favor of plaintiff and against the said defendants and that the court erred in denying the motion of defendant Chicago Great Western Railway Company for full indemnity against Swift & Company. The cause is remanded to the trial court with directions for further proceedings consistent herewith.